VAN ELSLANDER v THOMAS SEBOLD & ASSOCIATES, INC

Docket No. 301822. Submitted March 19, 2012, at Detroit. Decided June 28, 2012, at 9:00 a.m. Leave to appeal denied, 493 Mich 871.

Archie A. Van Elslander filed an action in the Oakland Circuit Court against, Daniel S. and Mary Elizabeth Follis and others, asserting breach of contract, breach of warranty, negligence and silent fraud arising from the sale of a home to him by the Follises. The case evaluation in 2005 was in favor of plaintiff, who rejected it, and all defendants except for the Follises were dismissed. The subsequent jury trial resulted in a verdict also in plaintiff's favor. The Court of Appeals, SCHUETTE, P.J., and BORRELLO and GLEICHER, JJ., reversed and remanded for a new trial on limited issues in an unpublished opinion per curiam, issued December 2, 2008 (Docket Nos. 272396 and 274966). On remand, a verdict of no cause of action was entered in favor of defendants who then sought case evaluation sanctions, taxation of costs and other sanctions. The court, Daniel P. O'Brien, J., conducted an evidentiary hearing and awarded defendants $86,813.98 in taxable costs, and $689,262.50 in attorney fees. Plaintiff appealed.

The Court of Appeals *held*:

1. Under MCL 600.2405(6), attorney fees authorized by statute or court rule may be taxed and awarded as costs. MCR 2.403(O)(6) expressly authorizes the recovery of attorney fees and costs as case evaluation sanctions so that the burden of the litigation's actual costs is imposed on the party who insists on trial by rejecting a mediation award. Actual costs are those costs taxable in any civil action and a reasonable attorney fee based on a reasonable hourly or daily rate as determined by the trial judge for services necessitated by rejection of the case evaluation; there must be a causal nexus between the services performed by the attorney and the particular party's rejection of the case evaluation. Sanctions should be imposed on a rejecting party under MCR 2.403(O) on the basis of the ultimate verdict that the parties are left with after appellate review is complete. The trial court did not err by awarding costs and sanctions to defendants because there was a sufficient causal nexus between plaintiff's rejection of the case evaluation award before the first trial and the subsequent

proceedings that resulted in the case being remanded for a new trial and ultimately a no cause of action verdict. Although the first verdict was more favorable to plaintiff, that judgment was reversed on appeal and the second verdict of no cause of action was clearly more favorable to defendants.

2. The court's award of $86,773.98 in costs was consistent with the amount requested by defendants, not more than their request, as plaintiff asserted.

3. MCL 600.2164(1) authorizes a trial court to award expert witness fees as an element of taxable costs; an expert witness must testify regarding matters of opinion, not to the established facts or deductions of science or other specific facts. The court abused its discretion by awarding expert witness fees for testimony by Daniel Sebold and Doug Maddelein because their testimony established facts pertaining to the construction of the house at issue, not to matters of opinion. The costs associated with their testimony were therefore not taxable.

4. For purposes of taxation of costs, expert witnesses are not automatically entitled to compensation for all services rendered. They are properly compensated for court time, the time required to prepare for their testimony and their travel expenses. MCL 600.2405(1); MCL 600.2552(1); MCL 600.2552(5). However, expert witnesses may not be compensated for educating counsel about expert appraisals, strategy sessions, and analyzing the opposing party's position. Under MCR 2.302(B)(4)(c)(i), the trial court must direct the party obtaining deposition testimony from an expert to pay him or her a reasonable fee, unless a manifest injustice would result from the payment. If an expert witness's trial preparation requires the work of an assistant, that amount is taxable if the aid provided is directed to preparing the expert witness to express an opinion.

5. Defendants were properly allowed to tax the cost of Robert Melvin's court, preparation for court, and travel expenses for the first trial, but not the interest accrued that was caused by defendants' failure to pay the bill. The court did not abuse its discretion by finding it would be manifestly unjust to tax the cost of Delno Malzahn's deposition and deposition preparation time because it was necessitated by defendant's substitution of experts on the basis of unspecified communication problems. Remand was necessary for an evidentiary hearing to distinguish for both expert witnesses between hours attributable to taxable versus nontaxable costs.

6. Pursuant to MCL 600.2405(5), the reasonable costs of any bond required by law, including any stay of proceeding or appeal

bond may be taxed and awarded as costs. Further, as long as the opposing party has agreed to a letter of credit in lieu of a bond the costs of the letter of credit are fully taxable as reasonable. The costs associated with defendants' letter of credit were properly taxable because plaintiff stipulated to the letter of credit and the trial court entered an order regarding same. However, the costs associated with a loan to obtain security for defendants' appeal bond were not taxable because there is no statutory authority for awarding them.

7. MCL 600.2549 provides that reasonable and actual fees paid for depositions of witnesses filed in any public office shall be allowed in the taxation of costs only if, at the trial or when damages were assessed, the depositions were read in evidence, except for impeachment purposes, or the documents or papers were necessarily used. Although the cost of trial transcripts constitutes a taxable cost in an appeal under MCL 600.2543(2) and MCR 7.219(F)(3), it is inappropriate to include the cost of transcripts prepared for an appeal as costs recoverable by the prevailing party in a civil action. The court abused its discretion by awarding the cost of certified copies of the transcripts from the first trial because even though they were also used in the second trial, they were originally prepared for purposes of the first appeal. The court abused its discretion by awarding the cost of deposition transcripts of Paul Medwig and Scott Bischoff from the first trial because while the video depositions were played at trial, neither the video recordings nor the deposition transcripts were filed in the clerk's office as required by MCL 600.2549 to be a taxable cost. Remand was necessary to determine whether the costs of the deposition preparation and testimony of Barry Krecow were taxable because the record was unclear whether he was designated as an expert.

8. Motion fees are taxable costs and the court did not abuse its discretion by awarding costs for this item; remand was necessary however to delineate which motion fees were sought and awarded as taxable costs.

9. Costs for service of trial subpoenas at the rate of $18 plus mileage are taxable costs, but the process server is only entitled to traveling fees for the service from the place where the court that issued or filed the process or paper is located to the place of service, not to exceed 75 miles each way. MCL 600.2555; MCL 600.2559(1)(g). The charges for service of process on Donn Vidosh and Larry Monigold were in excess of the statutory amount of $18 and remand was necessary to determine whether the mileage charges for these two witnesses and those associated with serving Paul Osterber were for the statutorily permissible 75 miles or less.

10. Subpoena fees are properly included as taxable costs, but only as they pertain to witnesses. MCL 600.2552(1) provides that a witness who attends any action or proceeding pending in a court of record shall be paid a witness fee of $12 for each day, or may be paid for his or her loss of working time but not more than $15 for each day. The subpoena fee for Donn Vidosh was properly taxed because he testified at trial, but not for Wally Kidd and Larry Monigold because there was no evidence that they had attended the trial. The court abused its discretion by awarding costs for subpoena fees associated with file copies as they are nontaxable.

11. Attorney fees incurred when responding to appeals and those that have already been recovered pursuant to a statute are not recoverable. Recovery of these costs is not meant to provide a form of economic relief to improve the financial lot of attorneys or produce windfalls for parties. A reasonable fee is a fee similar to that customarily charged in the locality for similar legal services, which may differ from the actual fee charged, or the highest rate the attorney might otherwise charge.

12. To determine what constitutes a reasonable attorney fee the court should first determine the fee customarily charged in the locality for similar legal services by using reliable surveys or other credible evidence of the legal market, multiplied by the reasonable number of hours expended in the case. Once that number is calculated the additional factors outlined in *Smith v Khouri*, 481 Mich 519 (2008) should be considered to determine if the fee should be adjusted up or down. The burden is on the fee applicant to produce satisfactory evidence that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation. If a factual dispute exists over the reasonableness of the hours billed or hourly rate claimed by the fee applicant, the party opposing the fee request is entitled to an evidentiary hearing. Excessive, redundant or otherwise unnecessary hours regardless of an attorney's skill, reputation or experience must be excluded when calculating what constitutes hours reasonably expended for an award of attorney fees.

13. The court erred by relying mainly on the statements and averments of defendants' attorneys to determine the rate of a reasonable attorney fee for those attorneys involved in the case. These statements were improperly self-serving rather than formed on the basis of objective data. While the court acknowledged considering survey testimony it placed greater weight on subjective testimony from interested persons over objective testimony that was available. The court abused its discretion by rejecting the

consideration of referral appreciation discounts, attractive rates to entice future business and familial relationship because they are factors in determining what constitutes a fee customarily charged in the locality for similar legal services. The court abused its discretion by awarding fees to defendants' attorneys that utilized a billing rate that exceeded their normal hourly rates and that were not calculated on the basis of market value. While fee enhancements are allowed, the award of fee enhancements in this case to certain of defendants' attorneys, on top of the excessive hourly rate allowed, constituted both overcompensation and double enhancement. Remand was necessary to determine the reasonableness of the time expenditures.

Affirmed in part, reversed in part, and remanded.

1. ATTORNEY FEES AND COSTS — CASE EVALUATION SANCTIONS — ACTUAL COSTS — PREVAILING PARTY AFTER APPEAL.

Under MCR 2.403(O)(6) attorney fees and actual costs may be awarded as case evaluation sanctions so that the burden of the litigation's actual costs is imposed on the party who insists on trial by rejecting a mediation award; actual costs are those costs taxable in any civil action and a reasonable attorney fee based on a reasonable hourly or daily rate as determined by the trial judge for services necessitated by rejection of the case evaluation; there must be a causal nexus between the services performed by the attorney and the particular party's rejection of the case evaluation; sanctions should be imposed on a rejecting party under MCR 2.403(O)(1) on the basis of the ultimate verdict that the parties are left with after appellate review is complete.

2. COSTS — EXPERT WITNESS FEES — OPINION TESTIMONY.

MCL 600.2164(1) authorizes a trial court to award expert witness fees as an element of taxable costs; an expert witness must testify regarding matters of opinion, not to the established facts or deductions of science or other specific facts; expert witnesses are not automatically compensated for all services rendered; they are properly compensated for court time, the time required to prepare for their testimony and their travel expenses; expert witnesses may not be compensated for educating counsel about expert appraisals, strategy sessions, or analyzing the opposing party's position; under MCR 2.302(B)(4)(c)(i), the trial court must direct the party obtaining deposition testimony from an expert to pay him or her a reasonable fee, unless a manifest injustice would result from the payment; if an expert witness's trial preparation requires the work of an assistant, that amount is taxable if the aid

provided is directed to preparing the expert witness to express an opinion (MCL 600.2405[1]; MCL 600.2552[1]; MCL 600.2552[5]).

3. ATTORNEY FEES — CALCULATION OF REASONABLE ATTORNEY FEES — ELEMENTS.

To determine what constitutes a reasonable attorney fee the court should first determine the fee customarily charged in the locality for similar legal services by using reliable surveys or other credible evidence of the legal market, multiplied by the reasonable number of hours expended in the case; once a reasonable fee is calculated the additional factors outlined in *Smith v Khouri*, 481 Mich 519 (2008) should be considered to determine if the fee should be adjusted up or down.

4. ATTORNEY FEES — REASONABLENESS OF HOURS BILLED — EVIDENTIARY HEARING.

If a factual dispute exists over the reasonableness of the hours billed or hourly rate claimed by the fee applicant, the party opposing the fee request is entitled to an evidentiary hearing; excessive, redundant or otherwise unnecessary hours, regardless of an attorney's skill, reputation or experience, must be excluded when calculating what constitutes hours reasonably expended for purposes of an award of attorney fees.

*Kolin & Associates, PLC* (by *Marjorie L. Kolin*), for Archie A. Van Elslander.

*Zausmer, Kaufman, August, Caldwell, & Tayler, PC* (by *Mark J. Zausmer*), and *Daniel S. Follis* for Daniel S. and Mary Elizabeth Follis.

Before: O'CONNELL, P.J., and SAWYER and TALBOT, JJ.

TALBOT, J. Plaintiff, Archie A. Van Elslander, appeals the award of case evaluation sanctions comprised of attorney fees and costs totaling $776,076.48. We affirm in part, reverse in part and remand.

I. FACTUAL AND PROCEDURAL HISTORY

This case initially involved claims pertaining to breach of contract, breach of warranty, negligence and

silent fraud, arising from the sale of a home by defendants, Daniel and Mary Follis, to Van Elslander. As described in a previous appeal to this Court:

> Unit 6 is a six-bedroom, approximately 9,000-square-foot home on the shore of Lake Michigan, in Bay Harbor. The Follises contracted with TSA to construct Unit 6, most of which occurred in 1996 and 1997, as a vacation residence and potential retirement home. In 1998, plaintiff purchased Unit 6 from the Follises for $3 million. In July 2002, powerful storms swept across Lake Michigan, and a tremendous quantity of water entered Unit 6. Plaintiff subsequently discovered that the home had extensive water damage and widespread mold. Significant portions of the home ultimately were removed and rebuilt, at great expense, and this lawsuit followed.[1]

The parties engaged in a case evaluation on April 13, 2005. Van Elslander was awarded $173,500, which he rejected. During the pendency of the action, all the defendants, except for Daniel and Mary Follis, were dismissed and the first trial proceeded solely against them on Van Elslander's claim of $1.6 million in damages. A nine-day jury trial resulted in a special verdict that rejected Van Elslander's claim of silent fraud but found the Follises had breached their responsibility to repair and awarded Van Elslander $680,838.82 in damages. With costs the award to Van Elslander totaled $706,465.30. The Follises appealed, and this Court remanded for a new trial solely on the issue of whether they had breached the escrow schedule pertaining to a window well and any damages arising therefrom.

A second trial was conducted on this limited issue, resulting in a jury verdict of no cause of action in favor of the Follises. The judgment permitted the Follises to

---

[1] *Van Elslander v Thomas Sebold & Assoc, Inc*, unpublished opinion per curiam of the Court of Appeals, issued December 2, 2008 (Docket Nos. 272396, 274966), p 2.

submit a motion for taxation of costs. Van Elslander filed several motions for reconsideration and appeals to this Court and the Michigan Supreme Court, which were all denied. The Follises sought case evaluation sanctions, taxation of costs and other sanctions. An evidentiary hearing was conducted after the Follises' sought reconsideration of the trial court's initial refusal to award sanctions. At the conclusion of a multi-day evidentiary hearing, the trial court awarded the Follises $86,813.98 in taxable costs, and attorney fees of $689,262.50 as sanctions pursuant to MCR 2.403(O), for a total award of $776,076.48. It is this subsequent award of sanctions that is the focus of this appeal.

## II. STANDARD OF REVIEW

Our Supreme Court has delineated the applicable standard of review pertaining to the award of case evaluation sanctions, as follows:

> A trial court's decision whether to grant case-evaluation sanctions under MCR 2.403(O) presents a question of law, which this Court reviews de novo. We review for an abuse of discretion a trial court's award of attorney fees and costs. An abuse of discretion occurs when the trial court's decision is outside the range of reasonable and principled outcomes.[2]

This Court reviews for an abuse of discretion a trial court's ruling on a motion for costs pursuant to MCR 2.625.[3] "[W]hether a particular expense is taxable as a cost is a question of law[,]" which we review de novo.[4]

---

[2] *Smith v Khouri*, 481 Mich 519, 526; 751 NW2d 472 (2008) (citations omitted).

[3] *Ivezaj v Auto Club Ins Ass'n*, 275 Mich App 349, 367; 737 NW2d 807 (2007).

[4] *Guerrero v Smith*, 280 Mich App 647, 670; 761 NW2d 723 (2008).

### III. PROPRIETY OF CASE EVALUATION SANCTIONS

Van Elslander contends that the trial court erred by awarding case evaluation sanctions premised on the unique circumstances of this case. Van Elslander rejected the case evaluation award of $173,500. The first jury trial resulted in a special verdict and award of $680,838.82 in favor of Van Elslander. The Follises appealed. This Court reversed and remanded, instructing that a new trial be conducted to address only one, limited issue. The second jury trial resulted in a no cause of action verdict in favor of the Follises. Van Elslander contests the award of case evaluation sanctions, arguing that the single issue tried on remand following the appeal to this Court was not the same or comparable to the multiple issues originally submitted for case evaluation.

It is well recognized that

> Michigan follows the "American rule" with respect to the payment of attorney fees and costs. Under the American rule, attorney fees generally are not recoverable from the losing party as costs in the absence of an exception set forth in a statute or court rule expressly authorizing such an award. The American rule is codified at MCL 600.2405(6), which provides that among the items that may be taxed and awarded as costs are "[a]ny attorney fees authorized by statute or by court rule." The American rule stands in stark contrast to what is commonly referred to as the "English rule," whereby the losing party pays the prevailing party's costs absent an express exception. MCR 2.403(O)(6) exemplifies the American rule by expressly authorizing the recovery of attorney fees and costs as case evaluation sanctions.[5]

The underlying purpose for the exception permitting the grant of mediation sanctions is to shift or "impose

---

[5] *Haliw v City of Sterling Hts*, 471 Mich 700, 706-707; 691 NW2d 753 (2005) (citations omitted).

the burden of litigation costs upon the party who insists upon trial by rejecting a mediation award."[6] This is consistent with the intent behind requiring litigants to engage in case evaluation in an effort "to encourage settlement and deter protracted litigation."[7]

Because the sanctions awarded in this matter are governed by MCR 2.403(O), we follow our Supreme Court's admonition:

> When called upon to interpret and apply a court rule, this Court applies the principles that govern statutory interpretation. Accordingly, this Court begins with the language of the court rule.[8]

MCR 2.403 (O)(1), the court rule that applies to a "[r]ejecting party's liability for [c]osts" following case evaluation, provides in relevant part:

> (1) If a party has rejected an evaluation and the action proceeds to verdict, that party must pay the opposing party's actual costs unless the verdict is more favorable to the rejecting party than the case evaluation.[9]

"Actual costs" are defined within the court rule as comprising "(a) those costs taxable in any civil action, and (b) a reasonable attorney fee based on a reasonable hourly or daily rate as determined by the trial judge for services necessitated by the rejection of the case evaluation."[10]

Courts have interpreted MCR 2.403(O) to be "trial-oriented."[11] "[U]nder MCR 2.403(O), a rejecting plain-

---

[6] *Keiser v Allstate Ins Co*, 195 Mich App 369, 372; 491 NW2d 581 (1992).

[7] *Jerico Constr, Inc v Quadrants, Inc*, 257 Mich App 22, 32; 666 NW2d 310 (2003) (quotation marks and citations omitted).

[8] *Haliw*, 471 Mich at 704-705 (citations omitted).

[9] We note that this rule was amended in 2011 with an effective date of May 1, 2012.

[10] MCR 2.403(O)(6)(a) and (b).

[11] *Haliw*, 471 Mich at 708.

tiff who is liable for a defendant's attorney fees is only liable for those fees that accrued after the case evaluation as a consequence of defending against the rejecting plaintiff's theories of liability and damage claims."[12] A potential award is limited because the rejecting party is "only [] liable for those attorney fees directly flowing from [his or] her rejection of the case evaluation—those that accrued after the rejection and which were caused by defendant having to defend against plaintiff's theory of liability and damage claim."[13] Specifically, "a causal nexus [must] be established between the services performed by the attorney and the particular party's rejection of the case evaluation."[14]

Van Elslander rejected the case evaluation necessitating the first trial. Although the outcome of the first trial was sufficiently favorable to Van Elslander to preclude an award of sanctions for rejection of the case evaluation, that holding was appealed and this Court determined error necessitating reversal of the jury's verdict and remanded the matter to the trial court to conduct a second trial on a limited issue. There can be no reasonable dispute that the outcome of the second trial, which resulted in a jury verdict of no cause of action, was more favorable to the Follises, meeting the threshold criteria of the court rule.[15]

Van Elslander contends that because the issues varied significantly between the two trials and the intervening appeal, the case evaluation award did not constitute a proper basis for comparison. Effectively, Van

---

[12] *Ayre v Outlaw Decoys, Inc*, 256 Mich App 517, 529; 664 NW2d 263 (2003).

[13] *Id.* at 528.

[14] *Id.* at 526.

[15] MCR 2.403(O)(3), indicates that a "verdict is considered more favorable to a defendant if it is more than 10 percent below the evaluation. . . ."

Elslander asserts that the favorable outcome he obtained at the conclusion of the first trial should preclude an award of fees and costs incurred for that proceeding. Such an outcome, however, would be contrary to and serve to "frustrate" the court rule's stated "purpose of imposing the burden of litigation costs on the party that rejects the mediation evaluation and elects to go to trial by allowing him to escape sanctions and burden defendant because of an error of law . . . of the trial court."[16] This Court has repeatedly ruled that "it is the ultimate verdict that the parties are left with after appellate review is complete that should be measured against the mediation evaluation to determine whether sanctions should be imposed on a rejecting party pursuant to MCR 2.403(O)."[17] In analyzing circumstances similar to those presented in this case, other panels of this Court have found that the "fees generated in connection with both trials were 'necessitated by the rejection' of the mediation evaluation because they arose after the rejection."[18] This interpretation of the court rule has been deemed "harmonious with its purpose, which is to impose the burden of litigation costs upon the rejecting party[,]" as "[t]he cost of two trials was part of the risk assumed . . . when [he or she] rejected the mediation evaluation."[19]

Because there existed a sufficient causal nexus between Van Elslander's rejection of the case evaluation award and the subsequent proceedings, the trial court did not err by determining the award of costs and

---

[16] *Keiser*, 195 Mich App at 374.

[17] *Id.* at 374-375.

[18] *Severn v Sperry Corp*, 212 Mich App 406, 417; 538 NW2d 50 (1995); quoting without citation MCR 2.403(O).

[19] *Id.*

sanctions to be appropriate. We do, however, find problematic the amount of costs and fees actually awarded.

### IV. TAXABLE COSTS

Van Elslander also challenges the award of $86,813.98 in taxable costs by the trial court. "Costs will be allowed to the prevailing party in an action, unless prohibited by statute or by these rules or unless the court directs otherwise, for reasons stated in writing and filed in the action."[20] "The power to tax costs is purely statutory, and the prevailing party cannot recover such expenses absent statutory authority."[21] As previously discussed by this Court, "[t]he starting presumption in all civil cases is:"

> "[C]osts shall be allowed as a matter of course to the prevailing party. *This does not mean, of course, that every expense incurred by the prevailing party in connection with the proceeding may be recovered against the opposing party.* The term 'costs' as used [in] MCR 2.625(A) takes its content from the statutory provisions defining what items are taxable as costs."[22]

As the prevailing parties, the Follises sought to tax costs for the following expenses: (a) fees for various expert witnesses for services rendered, (b) costs of an appeal bond and the loan of funds as security for the bond, (c) costs for certified copies of transcripts from the first trial, (d) costs for preparation of certain deposition transcripts, (e) costs for deposition preparation and testimony of a witness, (f) fees for motions that did not result in disposition of the claim, and (g) fees for the service of trial subpoenas and other miscellaneous subpoena fees.

---

[20] MCR 2.625(A)(1).

[21] *Guerrero*, 280 Mich App at 670.

[22] *Id.* at 671 (citations omitted).

Initially, Van Elslander challenges the award of $86,813.98 in costs as constituting greater than 100 percent of the taxable costs sought by the Follises. A review of the record demonstrates that the Follises' initially requested $86,773.98 in taxable costs when seeking case evaluation sanctions. But when the Follises submitted the document entitled "Total Sanctions Sought" during the evidentiary hearing, the amount set forth was $86,813.98. Thus, contrary to Van Elslander's assertion, the amount awarded by the trial court was consistent with the amount requested by the Follises.

Van Elslander next asserts error by the trial court in awarding taxable costs for witnesses Daniel Sebold and Doug Maddelein because of the failure to designate them as expert witnesses. Although there is statutory authority for "a trial court to award expert witness fees as an element of taxable costs,"[23] there is no commensurate statutory authority authorizing the fees of lay witnesses. Specifically, the relevant statutory provision is applicable to "witnesses testifying to matters of opinion" and not "to witnesses testifying to the established facts, or deductions of science, nor to any other specific facts."[24] This Court has previously determined that the statutory provision is "expressly inapplicable" when a witness is not called to testify to matters of opinion.[25]

Our review of the record reveals that both Sebold and Maddelein were not designated as expert witnesses and were called to testify to establish facts pertaining to the construction of the house at issue. Although in the course of the testimony, their opinions on a few matters

---

[23] *Rickwalt v Richfield Lakes Corp*, 246 Mich App 450, 466; 633 NW2d 418 (2001), citing MCL 600.2164(1).

[24] MCL 600.2164(3).

[25] *Guerrero*, 280 Mich App at 672.

were elicited, they were not "witnesses testifying to matters of opinion[,]" and the costs associated with procuring their testimony are not properly taxable.[26] It was therefore an abuse of discretion on the part of the trial court to award these items as taxable costs. Remand is necessary for the deduction of $3,327.34 from the taxable costs awarded pertaining to these two individuals.[27]

Van Elslander also challenges the trial court's award of the full amount of taxable costs of $12,872.71 for Robert Melvin in the first trial and $25,488.50 for Delno Malzahn in the second trial. Van Elslander argues that Melvin's invoices fail to detail the services performed with the requisite specificity and challenges the award of costs for time spent in court, for review, travel and conferences, and any interest assigned. "[A]n expert is not automatically entitled to compensation for all services rendered."[28] " '[C]onferences with counsel for purposes such as educating counsel about expert appraisals, strategy sessions, and critical assessment of the opposing party's position [are not regarded as] properly compensable as expert witness fees.' "[29] "Experts are properly compensated for court time and the time required to prepare for their testimony."[30] In addition, "the traveling expenses of witnesses may be taxed as costs, MCL 600.2405(1); MCL 600.2552(1); MCL 600.2552(5)[.]"[31]

---

[26] *Id.*, quoting MCL 600.2164(3).

[27] *Ivezaj*, 275 Mich App at 367.

[28] *Hartland Twp v Kucykowicz*, 189 Mich App 591, 599; 474 NW2d 306 (1991).

[29] *Id.*, quoting *Detroit v Lufran Co*, 159 Mich App 62, 67; 406 NW2d 235 (1987).

[30] *Hartland Twp*, 189 Mich App at 599.

[31] *Guerrero*, 280 Mich App at 673.

Costs are taxable for Melvin's court and preparation time in addition to his travel expenses.[32] The record is, however, unclear whether the costs for Melvin's meeting and conference time were taxable due to the lack of specificity of the billing. The billing fails to indicate whether the time alleged was attributable to trial preparation, which would be taxable, or to "purposes such as educating counsel," which is non-taxable.[33] Further, Melvin's bill groups together "Court & Meet" and "Court & Conf[e]rence." Consequently, we are unable to discern the actual hours expended for taxable costs of court time from that attributable to conference and meeting time, which would not necessarily be a taxable cost. There is also no justification for the award of interest incurred due to the Follises' failure to pay the bill as a taxable cost. Remand is therefore necessary for an evidentiary hearing to further distinguish and recalculate those hours spent on taxable versus nontaxable costs.[34]

Van Elslander contends that the invoices supplied by the Follises demonstrate that the services performed by Malzahn were largely unrelated to preparing for and offering testimony at trial and should be excluded. Specifically, Van Elslander challenges the trial court's award of costs for Malzahn's learning or becoming familiar with the file, the research of technical issues, the preparation of affidavits and providing assistance to the Follises' unsuccessful attempt to preclude Van Elslander's expert environmentalist from testifying at

[32] *Id.*

[33] *Hartland Twp*, 189 Mich App at 599, quoting *Lufran Co*, 159 Mich App at 67.

[34] See *Head v Phillips Camper Sales & Rental, Inc*, 234 Mich App 94, 113; 593 NW2d 595 (1999) (holding that unless the record is sufficient a trial court should usually hold an evidentiary hearing when the opposing party challenges the reasonableness of a fee request).

trial. Van Elslander also takes issue with the award of
deposition time and preparation, meetings with the
clients and $3,925 attributable to the work of assis-
tants.[35]

As previously discussed, although "[e]xperts are
properly compensated for court time and the time
required to prepare for their testimony,"[36] " 'confer-
ences with counsel for purposes such as educating
counsel about expert appraisals, strategy sessions, and
critical assessment of the opposing party's position [are
not regarded as] properly compensable as expert wit-
ness fees.' "[37] "MCR 2.302(B)(4)(c)(i) requires the trial
court to direct the party obtaining deposition testimony
from an expert to pay the expert a reasonable fee unless
a manifest injustice would result from the payment."[38]
If the preparation undertaken by an expert witness to
testify requires the work of assistants, the labors of
those assistants will be taxable if the aid provided is
directed to preparing the expert witness to express an
opinion.[39]

At the outset we note that the trial court determined,
"it would be manifestly unjust under MCR
2.302(B)(4)(c)(i) to require [Van Elslander] to pay the
deposition fee of [the Follises'] new expert, when the
only reason given for the substitution was unspecified
'communication problems' with the original expert, and
when the substitution has already caused [Van

[35] We note that Van Elslander incorrectly identifies the amount of
taxable costs attributed to Malzahn's assistants as our review of the bill
indicates the total attributed to his assistants is $2,105.

[36] *Hartland Twp*, 189 Mich App at 599.

[37] *Id.*, quoting *Lufran*, 159 Mich App at 67.

[38] *Kernen v Homestead Dev Co*, 252 Mich App 689, 692; 653 NW2d 634
(2002).

[39] See MCL 600.2164(3).

Elslander] to incur attorney fees and other expenses."
Consequently, costs were not taxable for Malzahn's
deposition time and deposition preparation time be-
cause these costs were specifically prohibited by the
trial court as manifestly unjust in light of the expert
witness substitution. Costs were taxable for Malzahn's
court time and preparation time, including his learning
the file and researching technical issues to the extent
they were related to trial preparation.[40] Costs were not
taxable for Malzahn's preparation of affidavits and
assistance in the Follises' unsuccessful attempt to pre-
vent Van Elslander's expert from testifying at trial as
these costs were prohibited because they constituted
" 'educating counsel about expert appraisals . . . and
critical assessment of the opposing party's posi-
tion[.]' "[41] It is unclear from the record if costs were
taxable for client meetings because Malzahn's bill fails
to indicate whether the purpose of the meetings was for
trial preparation or for other nontaxable purposes.[42] It
is also unclear whether costs were taxable for work
attributable to assistants, because Malzahn's bill does
not specify whether the time was spent preparing him
to express an opinion or merely for assembling data.
Because the time attributable to Malzahn's affidavit
and deposition were nontaxable, time spent on assisting
with these tasks or documents was also nontaxable.
Further, we are unable to discern from the record
before us whether the time spent on "research informa-
tion" was to assist this witness in preparing to express
an opinion or merely for data assembly. Similarly, it is
unclear what activities encompassed the time charac-
terized as "conflict & retention." Consequently, remand

---

[40] *Hartland Twp*, 189 Mich App at 599.

[41] *Id.* (citation omitted).

[42] *Id.*

is necessary for an evidentiary hearing to distinguish between hours attributable to taxable versus nontaxable costs and commensurate recalculation.

Van Elslander next argues that the trial court erred by awarding $26,860.62 for the cost of an appeal bond and $10,383 for the cost of the loan of funds for security for the bond. Specifically, he contends that the appeal bond was actually a letter of credit and that there is no legal basis to award the costs of security as taxable costs.

Statutory authority exists indicating, "[t]he reasonable costs of any bond required by law, including any stay of proceeding or appeal bond" may be taxed and awarded as costs.[43] This Court has held, "[w]here a party obtains a letter of credit in lieu of an appeal or stay bond, the costs of the letter of credit are fully taxable as 'reasonable,' as long as the opposing party has either agreed to the letter of credit in lieu of a bond[.]"[44] Because Van Elslander stipulated to the letter of credit and the trial court entered an order regarding it, these costs are fully taxable.[45]

Second, regarding the cost of a loan to obtain security for the appeal bond, neither party cites any authority to support that such cost is taxable. " '[C]osts are not recoverable where there is no statutory authority for awarding them.' "[46] Consequently, we find that the trial court abused its discretion by awarding this as an element of taxable costs.[47] Remand is required for

---

[43] MCL 600.2405(5).

[44] *North Pointe Ins Co v Steward (On Remand)*, 265 Mich App 603, 612; 697 NW2d 173 (2005).

[45] *Id.*

[46] *LaVene v Winnebago Indus*, 266 Mich App 470, 473; 702 NW2d 652 (2005) (citation omitted).

[47] *Guerrero*, 280 Mich App at 674.

modification of the order by decreasing the amount of taxable costs by $10,383.[48]

Van Elslander next asserts that the trial court erred by awarding $3,555.95 for the cost of certified copies of the transcripts from the first trial, the cost of the deposition transcripts of Paul Medwig and Scott Bischoff, and the cost of the deposition preparation and testimony of Barry Krecow. Specifically, Van Elslander contends that the trial transcripts were not secured for use at the second trial but rather were required for the first appeal. He asserts that the testimony of Medwig and Bischoff was introduced by plaintiff at the first trial by video and that the transcripts were never used at trial. Van Elslander also argues that Krecow was never designated as an expert and that his testimony was not used at trial.

Statutory authority provides, "[r]easonable and actual fees paid for depositions of witnesses . . . filed in any public office shall be allowed in the taxation of costs only if, at the trial or when damages were assessed, the depositions were read in evidence, except for impeachment purposes, or the documents or papers were necessarily used."[49] Although the cost of trial transcripts constitutes a taxable cost in an appeal,[50] it is inappropriate to include the cost of transcripts prepared for an appeal as costs recoverable by the prevailing party in a civil action.[51] It is evident from the bill, when viewed in conjunction with the date the transcripts were filed with the trial court and the date the claim of appeal was filed for the earlier appeal, that the subject transcripts

---

[48] *Id.* at 674-675.

[49] MCL 600.2549.

[50] MCL 600.2543(2) and MCR 7.219(F)(3).

[51] See *DeWald v Isola (After Remand)*, 188 Mich App 697, 703; 470 NW2d 505 (1991).

were prepared for purposes of the appeal and are not a taxable cost.[52] Merely because the transcripts were also "necessarily used" in the second trial does not negate the fact that they were prepared for purposes of appeal. Because the trial court abused its discretion by awarding this as an element of the costs taxed in the case,[53] we remand for modification of the order taxing costs by decreasing the amount of taxable costs by $3,555.95.[54]

In evaluating the propriety of taxing the costs for the depositions of Medwig and Bischoff, the record reveals that the video depositions were played at trial. It does not however appear that the video recordings or deposition transcripts were filed in the clerk's office as required to be properly taxable.[55] Because the inclusion of these costs was an abuse of discretion, it is necessary to reduce the amount of taxable costs by $228.[56]

Van Elslander contends that costs for the Krecow deposition were improperly taxed because Krecow was never designated as an expert and his testimony was not used at trial. It is unclear from our review of the record whether Krecow was designated as an expert. If so, costs would be properly taxable absent manifest injustice.[57] If Krecow was not presented as an expert, the costs would be nontaxable because it does not appear that the Krecow deposition was filed with the court.[58] On remand, the trial court must initially determine whether Krecow was an expert and assign or recalculate costs accordingly.

---

[52] *Id.*

[53] *Guerrero*, 280 Mich App at 674.

[54] *Id.* at 674-675.

[55] MCL 600.2549; see also *Guerrero*, 280 Mich App at 674; MCR 2.315(E) and (I).

[56] *Guerrero*, 280 Mich App at 674-675.

[57] *Kernen*, 252 Mich App at 692.

[58] MCL 600.2549.

Finally, Van Elslander argues that the trial court erred by awarding as taxable costs seven motion fees that did not result in disposition of the claim, fees for service of trial subpoenas and miscellaneous subpoena fees. Contrary to Van Elslander's arguments, the motion fees constitute taxable costs.[59] We note that the Follises attached support for 14 motions at a cost of $20 each. Yet, on the document submitted entitled Taxable Costs, the Follises only sought $140 or the cost of seven motions at $20 apiece. We are unable to discern from the record before us which seven motions the Follises sought as taxable costs and which seven motions Van Elslander is challenging on appeal. Remand is therefore necessary to delineate which motion fees were sought and awarded as taxable costs.

Costs for service of trial subpoenas are taxable costs. Statutory authority provides that "[a] person authorized by [the Revised Judicature Act of 1961, MCL 600.101 *et seq.*] or supreme court rule to serve process or a paper issued by or filed with a court in this state is only entitled to traveling fees for the service from the place where the court that issued or filed the process or paper is located to the place of service, not to exceed 75 miles each way."[60] "For a subpoena on discovery, for each person served, $18.00 plus mileage" is the "fee[] allowed for process or papers served out of a court in this state by a person authorized under [the Revised Judicature Act of 1961] or supreme court rule to serve process[.]"[61] The Follises attached as support for their request of $134.15 in taxable costs for service of trial subpoenas invoices for serving Donn Vidosh, Paul Os-

---

[59] *Put v FKI Indus, Inc,* 222 Mich App 565, 573; 564 NW2d 184 (1997); MCL 600.2529(1)(e), (2).

[60] MCL 600.2555.

[61] MCL 600.2559(1)(g).

terberg, and Larry Monigold. It appears that for Vidosh and Monigold, the charges were in excess of the permissible statutory amount of $18. The record is unclear whether the mileage charges were for the statutorily permissible 75 miles or less because only a monetary amount rather than a mileage calculation was provided. Consequently remand is again necessitated to determine whether these costs are taxable.[62]

The subpoena fees are properly includable as taxable costs. "A witness who attends any action or proceeding pending in a court of record shall be paid a witness fee of $12.00 for each day . . . or may be paid for his or her loss of working time but not more than $15.00 for each day shall be taxable as costs as his or her witness fee."[63] The Follises attached support for subpoena fees of $12 for Wally Kidd, $15 for Donn Vidosh, $15 for Larry Monigold, and $20 for file copies. Based on the August 24, 2005, date of the check request for Kidd, it appears that the subpoena was for his deposition, which was read into the record at trial. Absent proof that Kidd "attend[ed]" trial, the cost of his subpoena is nontaxable.[64] Because Vidosh testified at trial the cost of his subpoena is taxable.[65] Monigold did not testify at trial. Absent the requisite proof that Monigold "attend[ed]" trial, the cost of his subpoena is nontaxable.[66] Finally, subpoena fees are taxable costs only as they pertain to witnesses.[67] Because the statute does not provide that costs are taxable for subpoenaing file copies any associated costs for this function are nontaxable. Because

---

[62] *Guerrero*, 280 Mich App at 674-675.

[63] MCL 600.2552(1).

[64] *Id.*

[65] *Id.*

[66] *Id.*

[67] *Id.*

the trial court erred by awarding subpoena fees for Kidd and Monigold, in conjunction with the file copies as an element of the costs subject to taxation, remand is required to modify the order by decreasing the amount of taxable costs by $47.[68]

In summary, the trial court awarded all taxable costs requested by the Follises without adequate explanation. This constituted an abuse of discretion because some of the costs awarded were clearly nontaxable and other asserted costs required further inquiry to determine the propriety of their taxation.

### V. ATTORNEY FEES

#### A. RELEVANT LAW

In awarding attorney fees as sanctions, this Court follows the strictures and guidelines provided by our Supreme Court in *Smith*.[69] The *Smith* Court, in discussing case evaluation sanctions available pursuant to MCR 2.403, noted that MCR 2.403(O)(6) defines "actual costs" recoverable as "those costs taxable in any civil action and 'a reasonable attorney fee based on a reasonable hourly or daily rate as determined by the trial judge for services necessitated by the rejection of the case evaluation.' "[70] Specifically excluded from consideration are "attorney fees incurred when responding to appeals" and attorney fees that "have already been recovered pursuant to a statute."[71]

The *Smith* Court cautioned that, while encouraging settlement between litigants, the

---

[68] *Guerrero*, 280 Mich App at 674-675.

[69] *Smith*, 481 Mich 519.

[70] *Id.* at 527, quoting MCR 2.403(O)(6).

[71] *Id.* at 527 n 10.

rule . . . is not designed to provide a form of economic relief to improve the financial lot of attorneys or to produce windfalls. Rather, it only permits an award of a *reasonable* fee, i.e., a fee similar to that customarily charged in the locality for similar legal services, which, of course, may differ from the *actual* fee charged or the highest rate the attorney might otherwise command.[72]

The Court noted that "reasonable fees are not equivalent to actual fees charged,"[73] and that "reasonable fees 'are different from the prices charged to well-to-do clients by the most noted lawyers and renowned firms in a region.' "[74]

In the effort to determine what constitutes a "reasonable fee," the *Smith* Court noted the methodology typically used by trial courts as a roadmap or blueprint for analysis. Initially, "the burden of proving the reasonableness of the requested fees rests with the party requesting them."[75] It is incumbent on the trial court "to consider the totality of special circumstances applicable to the case at hand."[76] Citing the factors elucidated in *Wood v Automobile Inter-Ins Exch*, 413 Mich 573; 321 NW2d 653 (1982), the *Smith* Court identified six factors

to be considered in determining a reasonable attorney fee:

(1) the professional standing and experience of the attorney; (2) the skill, time and labor involved; (3) the amount in question and the results achieved; (4) the difficulty of the case; (5) the expenses incurred; and (6) the nature and length of the professional relationship with the client.'[77]

---

[72] *Id.* at 528.

[73] *Id.* at 528 n 12.

[74] *Id.* at 528.

[75] *Id.* at 528-529.

[76] *Id.* at 529.

[77] *Id.*, quoting *Wood*, 413 Mich at 588.

The Court also recognized the following eight factors delineated in the Michigan Rules of Professional Conduct (MRPC) 1.5(a), noting an overlap with *Wood*:

(1) the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;

(2) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer;

(3) the fee customarily charged in the locality for similar legal services;

(4) the amount involved and the results obtained;

(5) the time limitations imposed by the client or by the circumstances;

(6) the nature and length of the professional relationship with the client;

(7) the experience, reputation, and ability of the lawyer or lawyers performing the services; and

(8) whether the fee is fixed or contingent."[78]

The Court further recognized the value of data available in surveys such as the Economics of the Law Practice Surveys, as routinely compiled by the State Bar of Michigan.[79]

Determining that this multi-factor approach required "fine tuning," the Court delineated the following methodology for trial courts to conduct their analysis:

We hold that a trial court should begin its analysis by determining the fee customarily charged in the locality for similar legal services, i.e., factor 3 under MRPC 1.5(a). In determining this number, the court should use reliable surveys or other credible evidence of the legal market. This number should be multiplied by the reasonable number of

---

[78] *Id.* at 529-530.

[79] *Id.* at 530.

hours expended in the case (factor 1 under MRPC 1.5[a]
and factor 2 under *Wood*). The number produced by this
calculation should serve as the starting point for calculat-
ing a reasonable attorney fee. We believe that having the
trial court consider these two factors first will lead to
greater consistency in awards. Thereafter, the court should
consider the remaining *Wood*/MRPC factors to determine
whether an up or down adjustment is appropriate. And, in
order to aid appellate review, a trial court should briefly
discuss its view of the remaining factors.[80]

Providing further guidance, the Court stated:

The reasonable hourly rate represents the fee custom-
arily charged in the locality for similar legal services, which
is reflected by the market rate for the attorney's work.
"The market rate is the rate that lawyers of similar ability
and experience in the community normally charge their
paying clients for the type of work in question." We
emphasize that "the burden is on the fee applicant to
produce satisfactory evidence—in addition to the attor-
ney's own affidavits—that the requested rates are in line
with those prevailing in the community for similar services
by lawyers of reasonably comparable skill, experience and
reputation." The fees customarily charged in the locality
for similar legal services can be established by testimony or
empirical data found in surveys and other reliable reports.
But we caution that the fee applicant must present some-
thing more than anecdotal statements to establish the
customary fee for the locality. Both the parties and the trial
courts of this state should avail themselves of the most
relevant available data. For example, as noted earlier, in
this case defendant submitted an article from the Michigan
Bar Journal regarding the economic status of attorneys in
Michigan. By recognizing the importance of such data, we
note that the State Bar of Michigan, as well as other private
entities, can provide a valuable service by regularly pub-
lishing studies on the prevailing market rates for legal
services in this state. We also note that the benefit of such

---

[80] *Id.* at 530-531.

studies would be magnified by more specific data relevant to variations in locality, experience, and practice area.

In considering the time and labor involved (factor 1 under MRPC 1.5[a] and factor 2 under *Wood*) the court must determine the reasonable number of hours expended by each attorney. The fee applicant must submit detailed billing records, which the court must examine and opposing parties may contest for reasonableness. The fee applicant bears the burden of supporting its claimed hours with evidentiary support. If a factual dispute exists over the reasonableness of the hours billed or hourly rate claimed by the fee applicant, the party opposing the fee request is entitled to an evidentiary hearing to challenge the applicant's evidence and to present any countervailing evidence.

Multiplying the reasonable hourly rate by the reasonable hours billed will produce a baseline figure. After these two calculations, the court should consider the other factors and determine whether they support an increase or decrease in the base number."[81]

In the determination of "hours reasonably expended" the Court cautioned that " 'excessive, redundant or otherwise unnecessary' hours regardless of the attorneys' skill, reputation or experience" should be excluded.[82] The *Smith* Court also emphasized "that the goal of awarding attorney fees under MCR 2.403 is to reimburse a prevailing party for its 'reasonable' attorney fee; it is not intended to 'replicate exactly the fee an attorney could earn through a private fee arrangement with his client.' "[83] The Court did recognize the permissibility of "an upward adjustment for the truly exceptional lawyer."[84]

---

[81] *Id.* at 531-533 (citations omitted).

[82] *Id.* at 532 n 17.

[83] *Id.* at 534.

[84] *Id.* at 535.

B. ANALYSIS

Our review of the trial court's opinion and order, in conjunction with the transcripts of the evidentiary hearing, when analyzed in light of *Smith*, reveals several concerns with the trial court's application of the strictures of *Smith* and its methodology in determining what constitutes a reasonable attorney fee and hours in conjunction with the ultimate award.

1. REASONABLE ATTORNEY FEE DETERMINATION

The trial court erred in its determination of what constituted a reasonable attorney fee, despite its alleged recognition and adherence to *Smith*. Specifically, the trial court failed to follow the admonition of the Court that in determining what constitutes a reasonable attorney fee that courts "should use reliable surveys or other credible evidence of the legal market."[85] As recognized in *Smith*, "[t]he fees customarily charged in the locality for similar legal services can be established by testimony or empirical data found in surveys and other reliable reports. But we caution that the fee applicant must present something more than anecdotal statements to establish the customary fee for the locality."[86]

The trial court relied heavily and primarily on the statements and averments of the attorneys seeking the fees and sanctions. While this may constitute "empirical" data, we do not read *Smith* as suggesting such heavy reliance on subjective analysis. Rather, the emphasis of the Court was more on encouraging the use of formal surveys to establish market rate. In addition, the testimony of the individuals accepted by the trial court

---

[85] *Id.* at 530-531.

[86] *Id.* at 531-532.

was particularly self-serving making it questionable and more akin to "anecdotal statements" rather than objective data. While avoiding issues of credibility and weight,[87] we find it worth noting that defendants' expert, Norman Lippitt's opinion was subject to question given his free acknowledgement of familiarity with Zausmer's firm indicating "the principals of the law firm who I know very well . . . I have . . . thought enough of you to . . . represent us when we were sued on a commercial matter. . . . I played golf with you a couple of times." Lippitt's testimony was not particularly helpful or consistent with the strictures of *Smith*, as he opined a range of "reasonable" fees, indicating: $275 to $450 an hour for a partner, $175 to $250 an hour for an associate ($150 to $175 an hour for a paralegal and $90 to $135 an hour for a clerk). Lippitt further opined enhancements of $100 for a partner, $75 for an associate and $50 for a junior associate to be appropriate. Lippitt specifically indicated he gave no particular deference to the Bar Survey figures. While the trial court acknowledged considering testimony pertaining to "the Economics of Law Survey" it afforded greater weight to subjective testimony from clearly interested persons over objective data that was available.

In defining what constitutes a reasonable attorney fee, the *Smith* Court emphasized that a "reasonable hourly rate represents the fee customarily charged in the locality for similar legal services, which is reflected by the market rate for the attorney's work."[88] " 'The market rate is the rate that lawyers of similar ability and experience in the community normally charge their

---

[87] *Whitman v City of Burton*, 293 Mich App 220, 241; 810 NW2d 71 (2011) ("It is the fact-finder's responsibility to determine the credibility and weight of the testimony.")

[88] *Smith*, 481 Mich at 531.

paying clients for the type of work in question.' "[89] Consequently, the actual fee charged, while clearly not dispositive of what constitutes a reasonable fee, is a factor to be considered in determining market place value as it is reflective of competition within the community for business and typical fees demanded for similar work. The trial court specifically rejected any consideration of "referral appreciation discounts," "attractive rates to entice future business," and "familial relationships" as extraneous to a determination of what constitutes a reasonable fee. Yet such considerations are factors in determining what constitutes a "fee customarily charged in the locality for similar legal services." Such discounts are reflected in the rates charged by attorneys "of similar ability and experience in the community," and are reflective of what is "normally charge[d]" to paying clients.[90]

Zausmer testified that his retainer called for an hourly rate for a partner of $250 and $185 for an associate. Zausmer acknowledged that in charging this rate he was accommodating the referral source for this client and because the client was paying out of pocket and not through an insurer. Such behavior is not atypical and is representative of market value as it recognizes and helps to establish what constitutes a competitive fee within the local community. Zausmer asserted he normally would charge $395 an hour for complex litigation for his own fees and would bill for an associate at a rate of $200 to $250 an hour, alleging such rates were in line with the community and actually below what some attorneys might receive for similar work. In effect, Zausmer billed at a rate of $250 an hour, deemed $350 an hour reasonable and urged enhance-

[89] *Id.* (citation omitted).
[90] *Id.* at 530-531.

ment of his fee to $450 an hour due to his skill and expertise. Zausmer acknowledged that this case did not preclude him from accepting other litigation or work. The trial court determined that $350 an hour consti- tuted a reasonable fee for Zausmer and further adjusted the rate upward providing an enhancement of $100 an hour for this attorney.

Similarly, his associate Cameron Getto was awarded $250 an hour as a "reasonable fee" with enhancement of $50 an hour, for an award of $300 an hour. Getto acknowledged that no client has ever paid him $250 an hour and that his normal fees ranged from $200 to $225 an hour and that he has accepted fees as low as $135 an hour. We find it reasonable to assume that Getto's normal fees are reflective of his market value in the legal community and competition for business.

Ernest Bazzana of Plunkett and Cooney provided appellate support and post-remand assistance. He was awarded as a reasonable fee $250 an hour and it is unclear whether he is included in the $50 an hour enhancement granted by the trial court for other senior associates. Despite agreeing to a retainer fee of $100 an hour, Bazzana was seeking $350 an hour for a reason- able fee despite acknowledging that his typical fee was $175 an hour and that he performed insurance work for $130 an hour. Bazzana admitted that he intentionally discounted his fee in this matter because he was hoping to secure future business from Compuware through defendants' son, Dan Follis, premised on his work in this case.

Only Van Elslander's expert, Michael Jacobs, dis- cussed various surveys in determining a reasonable fee, which the trial court discounted. Jacobs is the only individual who recognized the distinction between what parties freely contract to pay and what would be rea-

sonable to require a third party to reimburse, suggesting that the goal is to make the person whole, consistent with the *Smith* Court's admonition that the pertinent court rule was "not designed to provide a form of economic relief to improve the financial lot of attorneys or to produce windfalls" and that a reasonable fee is one which is "customarily charged in the locality for similar services" and "may differ from the *actual* fee charged or the highest rate the attorney might otherwise command."[91]

The fee awarded to Dan Follis, Jr. presents its own category of problems. Dan Follis, Jr. is the son of Daniel and Mary Follis. He is an attorney and serves as general counsel at Compuware. He did not execute a retainer with his parents but provided liaison services and some legal expertise in this litigation. He admitted that he was not going to charge his parents for his services as he "would have done it anyway." Despite the intimate relationship and the lack of a retainer fee agreement, Follis was deemed to be entitled to $250 an hour as a reasonable rate of compensation for his services, indicating he was "qualified and served in a capacity here akin to Zausmer's firms' senior associates." In justifying its award of fees, the trial court asserted, "It is not an assessment on the reasonableness of hours expended by a son for his parents nor an assessment of the reasonableness of a rate for this attorney for work he normally performs," but rather was a reasonable rate "for *this* attorney for work on *this* file." Finding it appropriate to include time reportedly expended by Follis despite the absence of a retainer agreement or evidence of any billing for his services or remission of payment by the Follises for his work, the trial court based this part of the award on its determination that

[91] *Id.* at 528.

"[h]ad defendants not conceived their attorney son the record is persuasive that those hours spent would still have been necessary by an attorney of a status of or akin to Zausmer's firm's senior associates." It is unclear whether Follis's reasonable fee was also subject to enhancement.

It is difficult to justify the award as a sanction of fees for an individual who provided services that were agreed to be performed gratis. Such a result constitutes a windfall as it was not part of the billing to the Follises and, by definition, is something that goes beyond making the parties whole. The inclusion of fees for Follis borders on a punitive award, which is not the intent of the court rule and violates the *Smith* Court's admonition that the court rule "is not designed to provide a form of economic relief to improve the financial lot of attorneys or to produce windfalls."[92]

There exists an additional factor or standard of practice in the community that was either ignored or overlooked by the trial court pertaining to "blended fees." Getto acknowledged that his usual hourly rate is reduced when working simultaneously with an associate on a case. It can again be assumed that such a fee accommodation is not atypical and renders the attorney more competitive in seeking business by making the services more affordable, while offering the expertise or skill of an additional attorney. In this instance, all attorneys appear to have billed or sought higher fees despite the admission that multiple attorneys, of varying skill levels and experience, would work simultaneously on certain matters in this case. It would again be consistent to consider this as a factor in the determination of a reasonable fee, particularly in conjunction with concerns, which will be ad-

[92] *Id.* at 528.

dressed below, regarding a determination of reasonable hours expended in this matter.

2. REASONABLE HOURS

Unfortunately, the *Smith* Court failed to provide any substantive guidance regarding how to determine the reasonableness of hours claimed for work performed. In this instance, the trial court appears to have totally accepted the assertions of the Follises' counsel regarding the hours expended, specifically finding that there was no "no evidence besmirching" their testimony. The trial court rejected the methodology of comparison of hours expended by plaintiff's counsel as used by Van Elslander's proffered expert.

Getto asserted spending 100 hours in verifying the existence of an insurance payment to Van Elslander. Even the trial court questioned the necessity of so much time when a simple phone call or correspondence might reveal the necessary information, yet awarded the full time alleged. We also find it difficult to reconcile certain objective facts. Zausmer asserted the first trial was conducted over seven days, encompassed numerous issues, 300 exhibits and 20 witnesses. The associate involved in this portion of the proceedings billed 378.2 hours. Following remand, the second trial was approximately six days in length, addressed one issue and involved 10 to 12 witnesses, yet the different associate assigned to these proceedings billed 495.6 hours. In a similar vein, Bazzana, who was primarily a consultant post-remand, billed 57.9 hours premised on his commenting on the work of another attorney.

Zausmer acknowledged that at certain points multiple attorneys would be working simultaneously on the matter and reviewing each other's work. At one point, four individuals were billing on one matter. Yet Zaus-

mer indicated he assumed the vast majority of responsibility. He acknowledges having junior or less experienced associates contributing or reviewing his work. While we understand the desire to have other people review a legal document or product, this seems to be overkill and not a reasonable expenditure of time. While a supervisory or more experienced attorney may have oversight responsibilities, MRPC 5.1(b), it seems antithetical to have less experienced associates reviewing the senior or expert counsel's work at the level and frequency suggested herein. We would note that the *Smith* Court indicated that in determining the "hours reasonably expended" that " 'excessive, redundant, or otherwise unnecessary' hours regardless of the attorney's skill, reputation or experience" should be excluded.[93] Further, absent from the trial court's analysis is any indication that it reviewed the attorney fees claimed to be expended by the Follises "in order to prevent double payment for work if it was needlessly duplicated for the second trial."[94]

The trial court also impliedly appeared to accept allegations regarding the contentiousness of plaintiff, but did not appear to acknowledge admissions by the Follises' counsel that their clients were "incredibly demanding" and "not willing to cut corners." Arguably, this behavior led to increased hours as counsel for the Follises billed for more travel to conduct depositions rather than take them by telephone and for other services. This is pertinent to a determination of the reasonableness of the hours reportedly expended and billed. Finally, during the evidentiary hearing the parties appeared to only focus on the big picture and failed to address the details of the billings as there was little questioning or challenging of the amount

---

[93] *Id.*, at 532 n 17 (citation omitted).

[94] *Severn*, 212 Mich App at 417.

of time billed for particular services. Consequently, we find it difficult to determine how reasonable the time expenditures were and remand to the trial court for further proceedings.

### 3. FEE ENHANCEMENTS

The trial court also awarded fee enhancements of $100 to Zausmer and $50 to certain levels of associates premised on its review of the factors elucidated in *Woods* and the MRPC. Our concern is whether the figures attained meet the spirit and intent of the *Smith* decision and do not serve both a punitive function and result in duplicative awards.

*Smith* focuses on what constitutes a reasonable fee and admittedly provides for enhancement depending on special circumstances. Yet *Smith* also requires a balancing by indicating that "reasonable fees 'are different from the prices charged to well-to-do clients by the most noted lawyers and renowned firms in a region.' "[95] We find that the award of enhanced fees in the circumstances of this case is directly contrary to the admonition by the *Smith* Court that the "goal of awarding attorney fees under MCR 2.403 is to reimburse a prevailing party for its 'reasonable' attorney fee; it is not intended to 'replicate exactly the fee an attorney could earn through a private fee arrangement with his client.' "[96]

In addition to an incorrect determination of what comprises a reasonable fee calculated on the basis of market value, the trial court proceeded to award the Follises' counsel fees in excess of their normal rate and also fee enhancements. The correct process would be to

---

[95] *Smith,* 481 Mich at 528 (citation omitted).

[96] *Id.* at 534 (citation omitted).

determine a reasonable fee and then to adjust according to certain factors not to simply award the highest amount attainable or demanded by the best attorney in the community from a wealthy client. For example, Zausmer charged $250 an hour. The trial court awarded him a reasonable fee of $350 an hour and then enhanced it to $450 an hour. This results in both overcompensation and a double enhancement as it takes the billed fee, increases it to a reasonable fee, and then provides an additional enhancement to result in receipt of almost double the fees expected when effectuating the retainer with these clients. The result for attorneys, such as Getto, is similar. Getto acknowledged never receiving $250 an hour from clients, yet he was provided that amount plus an additional $50 enhancement.

While enhancement is permissible, the actions of the trial court failed to recognize the intent of the *Smith* Court to acknowledge special circumstances in which the increase of the reasonable fee is appropriate while counterbalancing it against the admonition that the court rule for sanctions is not intended or "designed to provide a form of economic relief to improve the financial lot of attorneys or to produce windfalls."[97]

VI. CONCLUSION

We affirm, in general, the trial court's award of case evaluation sanctions and taxable costs. We reverse the amount of attorney fees and taxable costs awarded and remand for further hearings consistent with this opinion. We do not retain jurisdiction.

O'CONNELL, P.J., and SAWYER, J., concurred with TALBOT, J.

---

[97] *Id.* at 528.