*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

AUTOKINITON U.S. HOLDINGS, INC,

        Plaintiff-Appellee/Cross-Appellant,

v

MICHAEL GIBBS and JAMES RUZZIN,

        Defendants,

and

CHALLENGE MANUFACTURING COMPANY,

        Defendant-Appellant/Cross-Appellee.

UNPUBLISHED
December 7, 2023

No. 363363
Oakland Circuit Court
LC No. 2020-184860-CB

Before: RIORDAN, P.J., and CAVANAGH and GARRETT, JJ.

PER CURIAM.

In this dispute over attorney fees and costs, defendant Challenge Manufacturing Company ("Challenge") appeals the trial court's order finding that the complaint filed by plaintiff Autokiniton US Holdings, Inc, ("Autokiniton") was not frivolous. Challenge also objects to the trial court's decision not to award expert witness fees as taxable costs. In a cross-appeal, Autokiniton argues that the trial court erred by finding that Challenge was the "prevailing party" in this action and by awarding mediation fees to Challenge as taxable costs. Having reviewed the record and discerning no error by the trial court, we affirm.

## I. FACTUAL AND PROCEDURAL HISTORY

Autokiniton and Challenge are direct competitors in the automotive supply industry. Defendants James Ruzzin and Michael Gibbs are former employees of Autokiniton. When Ruzzin left the company in June 2020, he entered into a Separation Agreement ("Agreement") with

Autokiniton.[1]  Among other things, the Agreement included a clause in which Ruzzin agreed, for two years, not to "induce or encourage" any employee of Autokiniton to leave.  After leaving Autokiniton, Ruzzin became Chief Operating Officer of Challenge.  Gibbs was also hired by Challenge after working for Autokiniton.

Soon after these departures, on November 25, 2020, Autokiniton filed a four-count complaint against Ruzzin, Gibbs, and Challenge.  The complaint alleged (1) breach of an employment agreement against Ruzzin, (2) misappropriation of trade secrets under the Uniform Trade Secrets Act (UTSA), MCL 445.1901 *et seq.*, against Ruzzin and Gibbs, (3) tortious interference with contract against Challenge, and (4) tortious interference with prospective business relations against Challenge.  According to Autokiniton, Ruzzin violated the Agreement by using trade secrets about Autokiniton to help recruit employees away from the company.  And Gibbs allegedly colluded with Ruzzin to take hundreds of documents containing Autokiniton's trade secrets.  For the tortious interference with contract claim, Autokiniton alleged that Challenge "intentionally and unjustifiably induced Ruzzin to breach and continue to breach" the Agreement.  As for the final count, Autokiniton alleged that Challenge intentionally interfered with its prospective business relations "through its employment of Ruzzin and Gibbs and by, among other things, soliciting and hiring nine other of Autokiniton's key employees in the past year for the purpose of capitalizing on the former Autokiniton employees' customer relationships as well as their knowledge of Autokiniton's proprietary technical innovations and processes."  Along with its complaint, Autokiniton moved for a temporary restraining order (TRO) and preliminary injunction.  The trial court initially granted a TRO.  After Challenge moved to dissolve the TRO, and following a hearing on the matter, the trial court granted the motion but entered a preliminary injunction.  The injunction prohibited defendants from using any files that were the property of Autokiniton, required the return of any of Autokiniton's property, and ordered that all devices at issue belonging to Autokiniton be provided to a neutral forensic expert.

In March 2021, the parties agreed to enter mediation.  After agreeing to a settlement in principle, the final terms of an agreement fell apart.  Autokiniton later moved to enforce the settlement agreement or in the alternative for voluntary dismissal of the case without prejudice.  Challenge opposed the motion and requested that the trial court voluntarily dismiss the case with prejudice and award costs and attorney fees to Challenge.  The trial court found that the parties had not reached an enforceable settlement agreement.  The court agreed to voluntarily dismiss the case with prejudice and to address the terms of dismissal—whether to award costs and attorney fees to Challenge—after further briefing.

Challenge then moved for costs and attorney fees that it incurred while defending the claims brought by Autokiniton.  Challenge alleged entitlement to these amounts because Autokiniton's complaint was frivolous and Autokiniton brought a bad-faith misappropriation claim under the UTSA.  The trial court granted the motion in part, concluding that Challenge was entitled to costs under MCR 2.625(A)(1) because it was the "prevailing party" in the case.  But the court denied Challenge's request for costs and attorney fees on other grounds.  Challenge failed to establish that the complaint was frivolous, the trial court first held.  There was "sufficient credible

---

[1] The agreement was between Ruzzin and two subsidiaries of Autokiniton.

evidence" to reject Challenge's position that Autokiniton did not undertake a reasonable inquiry into the factual and legal basis of the case. The trial court found that Autokiniton

> knew before the Verified Complaint was filed that Defendant Ruzzin was party to a Separation Agreement which barred him from disclosing or using the Plaintiff's confidential information, prohibited him from interfering with the Plaintiff's relationships with customers and employees, and specifically prohibited him from encouraging any of the Plaintiff's employees from leaving their employment. Prior to filing the Verified Complaint, the Plaintiff also had reason to believe that Defendant Challenge had increased its employee recruiting efforts and hired several of Plaintiff's employees, including those who worked with Defendant Ruzzin and Defendant Gibbs; Defendant Ruzzin was involved in hiring key employees for Defendant Challenge; [and] Defendant Challenge knew of Defendant Ruzzin's Separation Agreement . . . .

Challenge was also not entitled to attorney fees under the UTSA, the trial court explained, because Autokiniton only brought a misappropriation claim against Gibbs and Ruzzin.

Soon after, Challenge filed its bill of costs totaling more than $28,000. Nearly all the costs sought by Challenge were expert witness fees or mediation fees. In support of the bill of costs, Challenge attached an affidavit from Larry Bennett, its lead counsel from the beginning of this litigation. Bennett claimed that Challenge's expert witness fees involved the experts preparing to testify in this litigation. Bennett also contended that 50% of the mediation fees—the portion paid by Challenge—should be awarded as taxable costs. Autokiniton filed an objection to the bill of costs, arguing that Challenge's expert witness fees were not taxable costs because the amount sought was not for preparation for trial testimony. Autokiniton also argued that Challenge's request to tax mediation fees as costs was improper because the parties voluntarily agreed to mediation. After the court clerk struck the costs objected to by Autokiniton, Challenge moved the trial court for review. Challenge argued that its affidavit from Bennett was the only evidence before the court on taxable costs and that there were no facts disputing the affidavit. Challenge also requested an evidentiary hearing if the trial court believed there was any merit to Autokiniton's objection. In response, Autokiniton stated that it was not required to file an affidavit with its objection to the bill of costs, nor did the court rules permit an evidentiary hearing. Autokiniton asked the trial court to uphold the court clerk's decision on taxable costs.

The trial court granted in part and denied in part Challenge's motion for review of taxation of costs. The court rejected Challenge's argument that Autokiniton's objection was defective because it failed to submit an affidavit. On an award of costs, the trial court authorized 50% of the mediation fees as taxable costs. But the court declined to award expert witness fees as taxable costs, noting that no expert testimony was ever taken and the invoice entries from Challenge's experts did not show any preparation for testimony. The court also did not believe that an evidentiary hearing was warranted.

In accordance with the prior ruling of the trial court, the case was voluntarily dismissed with prejudice.[2] These appeals followed.

## II. CHALLENGE'S APPEAL

Challenge contends that the trial court erred in two respects: first, by denying its motion for costs and attorney fees on the basis of a frivolous lawsuit and a bad-faith misappropriation claim; and second, by rejecting its request to award expert witness fees as taxable costs.

## A. FRIVOLOUS LAWSUIT AND BAD-FAITH MISAPPROPRIATION CLAIM

Challenge argues that Autokiniton's lawsuit was frivolous because Autokiniton had no reasonable basis for believing its underlying factual allegations were true, Autokiniton's claims lacked legal merit, and Autokiniton filed the lawsuit for an improper purpose.

"[T]his Court reviews for clear error a trial court's finding that an action is not frivolous, because whether a party's claim is frivolous in a specific case is a question of fact." *Pontiac Country Club v Waterford Twp,* 299 Mich App 427, 438-439; 830 NW2d 785 (2013) (citation omitted). "Clear error exists where, although there is evidence to support the trial court's finding, the reviewing court is left with a definite and firm conviction that a mistake has been made." *In re Forfeiture of $2,124*, 342 Mich App 569, 573; 995 NW2d 588 (2022).

MCL 600.2591(1) entitles a party to recover costs and fees for a frivolous action:

> Upon motion of any party, if a court finds that a civil action or defense to a civil action was frivolous, the court that conducts the civil action shall award to the prevailing party[3] the costs and fees incurred by that party in connection with the civil action by assessing the costs and fees against the nonprevailing party and their attorney.

An action is "frivolous" when one or more of the circumstances below exist:

> (*i*) The party's primary purpose in initiating the action or asserting the defense was to harass, embarrass, or injure the prevailing party.

> (*ii*) The party had no reasonable basis to believe that the facts underlying that party's legal position were in fact true.

---

[2] Ruzzin and Gibbs were separately dismissed from this litigation with prejudice, and neither individual is a party to this appeal.

[3] Prevailing-party status is a necessary predicate to entitlement to costs and attorney fees under MCL 600.2591(1). For purposes of Challenge's appeal, we assume without deciding that the trial court properly found that Challenge was the "prevailing party" in this litigation. Autokiniton raises this issue in its cross-appeal, but as we will discuss, we decline to address it on the merits.

(*iii*) The party's legal position was devoid of arguable legal merit. [MCL 600.2591(3)(a).]

"The determination whether a claim or defense is frivolous must be based on the circumstances at the time it was asserted." *Jerico Const, Inc v Quadrants, Inc*, 257 Mich App 22, 36; 666 NW2d 310 (2003). "That the alleged facts are later discovered to be untrue does not invalidate a prior reasonable inquiry." *Id*. Put differently, the fact that a party does not ultimately prevail on its claims does not render the complaint frivolous. *Kitchen v Kitchen*, 465 Mich 654, 662; 641 NW2d 245 (2002). "The purpose of imposing sanctions for asserting frivolous claims is to deter parties and attorneys from filing documents or asserting claims and defenses that have not been sufficiently investigated and researched or that are intended to serve an improper purpose." *BJ's & Sons Const Co, Inc v Van Sickle*, 266 Mich App 400, 405; 700 NW2d 432 (2005) (cleaned up).

Although Challenge claims that all three grounds for finding a frivolous action under MCL 600.2591(3)(a) are present, Challenge focuses nearly all its time arguing that Autokiniton lacked a reasonable basis to believe the facts supporting its claims against Challenge were true. We conclude that the trial court did not clearly err by finding that Autokiniton had a reasonable basis to believe its factual allegations were true.

First, Autokiniton knew about Ruzzin's Agreement and the restrictions it imposed on Ruzzin in his new role at Challenge, including that he could not "induce or encourage" employees to leave Autokiniton. When filing its complaint, Autokiniton also knew that several of its former employees had been hired by Challenge, and Autokiniton had a reasonable basis, supported by e-mail correspondence, to believe that Ruzzin was working closely with some of these employees at Challenge. Autokiniton also had a reasonable basis to believe that Ruzzin, as a Chief Operating Officer at Challenge, was intimately involved in the hiring of new employees, including previous Autokiniton employees. That belief bore at least some truth as this litigation went on. For instance, although Ruzzin, in an affidavit, denied recruiting or soliciting Autokiniton employees to Challenge, he admitted that he "sometimes directed that offers be made" to former Autokiniton employees. Autokiniton also uncovered evidence supporting its claim of a breach of the Agreement: a text message sent by Ruzzin to Gibbs—while Gibbs still worked at Autokiniton—that Ruzzin was the hiring manager at one of Challenge's plants and had "full control." Gibbs ultimately resigned from Autokiniton shortly after receiving a promotion to go work for Challenge.

Challenge argues that even if there were merit to the claims against Ruzzin, there was no evidence that *Challenge* knew of Ruzzin's Agreement or any restrictions on his ability to assist in the hiring process. Determining the knowledge possessed by a corporation requires imputing knowledge possessed and acquired by the corporation's employees. In *Upjohn Co v New Hampshire Ins Co*, 438 Mich 197, 214-215; 476 NW2d 392 (1991), our Supreme Court recognized the "imputed-collective-knowledge standard." That doctrine generally provides:

> When a person representing a corporation is doing a thing which is in connection with and pertinent to that part of the corporation business which he is employed, or authorized or selected to do, then that which is learned or done by that person pursuant thereto is in the knowledge of the corporation. The knowledge possessed by a corporation about a particular thing is the sum total of all the knowledge which its officers and agents, who are authorized and charged with the

doing of the particular thing acquire, while acting under and within the scope of their authority. [*Id*. at 214 (cleaned up).]

The complaint alleged that Challenge knew of the existence of Ruzzin's Agreement with Autokiniton by at least November 18, 2020, when Autokiniton sent a letter to Challenge. Challenge admits that it received this letter and therefore essentially concedes the factual basis for the allegation. In any event, discovery revealed that high-level employees learned of the Agreement even earlier than November 18. In a November 9, 2020 e-mail, Ruzzin told Michael Blundy, a manager for Challenge and former Autokiniton employee, about his Agreement with Autokiniton. And in a different e-mail four days later, Ruzzin told Blundy and Michael Strong, Challenge's Director of Manufacturing Engineering, about the Agreement. This collective knowledge possessed by employees of Challenge could reasonably be imputed to the company. See *Upjohn Co*, 438 Mich at 214. The trial court did not clearly err by finding that Autokiniton had a reasonable basis to believe that Challenge knew about Ruzzin's Agreement.

Simply put, we are not definitely and firmly convinced that the trial court erred by finding that Autokiniton's complaint was not frivolous. When filing its complaint, Autokiniton knew or had a "reasonable basis to believe that the facts underlying [its] legal position were in fact true." MCL 600.2591(3)(a)(*ii*). And the fact that discovery bore truth to several core factual allegations against Challenge supports this conclusion. Challenge's disagreement with certain allegations reads more like a motion for summary disposition or an argument to a jury; it is not a basis for concluding that sanctions are warranted for the filing of a frivolous complaint. See *Kitchen*, 465 Mich at 662 ("[P]laintiffs presented a sufficient argument grounded in law and fact to avoid a finding of frivolity.").

Challenge also has not established that Autokiniton's "legal position was devoid of arguable legal merit," MCL 600.2591(3)(a)(*iii*), or that Autokinition's "primary purpose in initiating the action or asserting the defense was to harass, embarrass, or injure" Challenge, MCL 600.2591(3)(a)(*i*). First, Challenge fails to explain why the claims brought by Autokiniton lacked arguable legal merit. Challenge does not articulate how the allegations raised against it failed to state a cause of action for tortious interference with contract and tortious interference with prospective business relations. Nor does Challenge even discuss the elements of either claim. By failing to offer any legal analysis, Challenge has abandoned its argument that Autokiniton's claims lacked any legal merit. See *People v McPherson*, 263 Mich App 124, 136; 687 NW2d 370 (2004) ("The failure to brief the merits of an allegation of error constitutes an abandonment of the issue."). Second, Challenge offers little support for its "primary purpose" argument. Challenge contends, in conclusory fashion, that Autokiniton was engaged in "an improper agenda to coerce relief it could not otherwise obtain, stemming the flow of employees to a competitor." While offering no evidence of an improper purpose, Challenge points out that Autokiniton's counsel was sanctioned for similar conduct in a case from over 15 years ago. That anecdote is irrelevant to determining whether the trial court clearly erred in this case by finding that Autokiniton's lawsuit was not frivolous. See *Jerico Const, Inc*, 257 Mich App at 36. Early in this litigation, Autokiniton obtained a preliminary injunction requiring defendants to return all files, documents, and other property of Autokiniton that they possessed. Autokiniton had a legitimate interest in maintaining the confidentiality of its property, obtaining the return of any property possessed by a direct competitor and its employees, and enforcing the terms of its Agreement with Ruzzin. Challenge has not shown that Autokiniton's lawsuit was filed to harass, embarrass, or injure, rather than for a myriad of

-6-

legitimate business purposes. The trial court therefore did not clearly err by finding that Autokiniton's complaint was not frivolous.[4]

Relatedly, Challenge asserts that it was also entitled to attorney fees under the UTSA because Autokiniton brought a claim of misappropriation in bad faith. Under the UTSA, "[a] court can enjoin actual or threatened misappropriation of a trade secret and can also compel affirmative acts necessary to protect a trade secret." *CMI Intern, Inc v Intermet Intern Corp*, 251 Mich App 125, 132; 649 NW2d 808 (2002), citing MCL 445.1903(1) and (3). "Misappropriation includes the disclosure or use of a trade secret without consent." *Id*., citing MCL 445.1902(b)(*ii*). At issue,

> If a claim of misappropriation is made in bad faith, a motion to terminate an injunction is made or resisted in bad faith, or willful and malicious misappropriation exists, the court may award reasonable attorney's fees to the prevailing party. [MCL 445.1905.]

Fatal to Challenge's argument—as the trial court and Autokiniton correctly noted—is that Autokiniton never raised a claim of misappropriation against Challenge. Autokiniton's complaint contained four counts and only one involved a claim of misappropriation of trade secrets under the UTSA. This misappropriation claim was brought against Ruzzin and Gibbs, not Challenge. When Ruzzin and Gibbs were dismissed from this case, so too was the claim of misappropriation. Yet Challenge suggests that the UTSA sanctions provision applies here because count IV of the complaint—the claim of tortious interference with prospective business relations—incorporated all previous allegations and requested an injunction prohibiting Challenge from "using any of Autokiniton's confidential or trade secret information or property that it unlawfully gained access to through Ruzzin and Gibbs . . . ." Despite Challenge's attempt, incorporating previous allegations and including a request to enjoin Challenge from using Autokiniton's trade secret information does not transform a claim of tortious interference with prospective business relations into a claim of misappropriation of trade secrets. Simply put, Autokiniton did not raise a misappropriation claim against Challenge. Therefore, MCL 445.1905—the statutory provision permitting an award of attorney fees for a claim of misappropriation made in bad faith—does not apply here.[5] Challenge is not entitled to attorney fees under the UTSA.

---

[4] Challenge's related argument seeking sanctions under MCR 1.109(E) also lacks merit. MCR 1.109(E)(5) provides that an attorney's signature on a pleading constitutes a certification that the pleading is "well grounded in fact . . .[;] warranted by existing law or a good-faith argument for the extension, modification, or reversal of existing law; and . . . not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation." Violating MCR 1.109(E)(5) can result in an order of sanctions, including an order to pay the other parties' reasonable attorney fees. MCR 1.109(E)(6). Because Challenge's comparable arguments about a frivolous complaint under MCL 600.2591 lack merit, any argument about a violation of MCR 1.109(E)(5) similarly fails.

[5] Even if it did, the UTSA's attorney fee provision is permissive. "If a claim of misappropriation is made in bad faith, . . . the court *may* award reasonable attorney's fees to the prevailing party." MCL 445.1905 (emphasis added). We generally give "may" its ordinary and accepted meaning

-7-

B. EXPERT WITNESS FEES

Challenge next argues that the trial court erred by failing to tax its expert witness fees because the time expended by Challenge's experts involved preparation for testimony.

We review for an abuse of discretion the trial court's ruling on the proper amount of taxable expert witness fees, as well as the decision that an evidentiary hearing is not warranted. *Carlsen Estate v Southwestern Mich Emergency Servs, PC*, 338 Mich App 678, 701; 980 NW2d 785 (2021). "An abuse of discretion occurs when the decision resulted in an outcome falling outside the range of principled outcomes." *Id*. at 693 (cleaned up). "Whether a particular expense is taxable as a cost is a question of law" that we review de novo. *Id*. at 701. That means we review the legal issue independently, giving "respectful consideration, but no deference," to the trial court's ruling. *Wasik v Auto Club Ins Assoc*, 341 Mich App 691, 695; 992 NW2d 332 (2022).

A trial court may generally award costs to the prevailing party in an action. MCR 2.625(A)(1). More specifically, "MCL 600.2164(1)[6] authorizes a trial court to award expert witness fees as an element of taxable costs." *Rickwalt v Richfield Lakes Corp*, 246 Mich App 450, 466; 633 NW2d 418 (2001). "This Court has repeatedly interpreted MCL 600.2164(1) to allow the prevailing party to tax costs for an expert's trial preparation, even if the case did not proceed to trial, provided that the witness would have testified if there had been a trial." *Carlsen Estate*, 338 Mich App at 705. See also *Peterson v Fertel*, 283 Mich App 232, 241; 770 NW2d 47 (2009) ("Indeed, it is well settled that, regardless of whether the expert testifies, the prevailing party may recover fees for trial preparation."). This Court has provided some guidance for determining the types of expert witness services that may be taxed as costs:

> An expert is not automatically entitled to compensation for all services rendered. Conferences with counsel for purposes such as educating counsel about expert appraisals, strategy sessions, and critical assessment of the opposing party's position are not regarded as properly compensable as expert witness fees. Experts are properly compensated for court time and the time required to prepare for their testimony. [*Van Elslander v Thomas Sebold & Assoc, Inc*, 297 Mich App 204, 218; 823 NW2d 843 (2012) (cleaned up).]

The trial court declined to award taxable costs to Challenge for its expert witness fees because "no testimony was ever take[n] in this case" and because the expert invoices did not

---

as a permissive term, while "shall" is a mandatory directive. See *Atchison v Atchison*, 256 Mich App 531, 535; 664 NW2d 249 (2003). Thus, even if MCL 445.1905 applied in this case, Challenge fails to explain why the trial court would have erred had it exercised its discretion and declined to award reasonable attorney fees.

[6] The statute provides in relevant part: "No expert witness shall be paid, or receive as compensation in any given case for his services as such, a sum in excess of the ordinary witness fees provided by law, unless the court before whom such witness is to appear, or has appeared, awards a larger sum, which sum may be taxed as a part of the taxable costs in the case." MCL 600.2164(1).

support Challenge's claim that its expert witness fees related to time spent preparing for testimony. The trial court's reasoning was partly flawed. The fact that "no testimony was ever take[n]" from Challenge's experts is not determinative of whether the expert witness fees incurred by Challenge were taxable costs. The relevant question is whether Challenge's experts expended time preparing to testify, even though none of the experts ultimately testified at any hearing. See *id*. at 218. On that point, the trial court found that Challenge failed to support its bill of costs with evidence that its experts performed tasks in preparation for testimony.[7]

Challenge retained the services of Speckin Forensics ("Speckin") and N1 Discovery.[8] Beginning with Speckin, its invoice to Challenge listed these entries:

**INVOICE FOR PROFESSIONAL SERVICES**

| | | Hours | Rate | Total |
|---|---|---|---|---|
| Larry A. Dalman Services | Drive Image/ Drive copy 12/2/20 | 5 | 250.00 | 1,250.00 |
| Larry A. Dalman Services | Affidavit review 12/17/20 | 1 | 250.00 | 250.00 |
| Don Smith Services | Examine evidence drive 12/12/20 | 5 | 250.00 | 1,250.00 |
| Don Smith Services | Examine cloud drive archive's 12/13/20 | 4 | 250.00 | 1,000.00 |
| Don Smith Services | Client phone call/ prepare response 12/14/20 | 4 | 250.00 | 1,000.00 |
| Don Smith Services | Prepare 2nd response for hearing 12/15/20 | 6 | 250.00 | 1,500.00 |
| Don Smith Services | Affidavit prep 12/17/20 | 1 | 250.00 | 250.00 |
| Erich J. Speckin Services | Tx calls, discuss case (No Charge) | 2.5 | 0.00 | 0.00 |

Bennett's affidavit claimed that all work from Speckin was in "preparation for testimony during the temporary restraining order and preliminary injunction stages, and then deposition and/or trial." This assertion is belied by the record. Challenge's motion to dissolve the TRO made several arguments about the procedural deficiencies of Autokinition's TRO request and the absence of factual and legal merit to Autokiniton's claim. The motion did not discuss the need for expert testimony or the expert-intensive issues involved in this litigation. Challenge attached several affidavits to this motion from its then-current employees but none from any retained experts. At the hearing on Challenge's motion, the trial court questioned the attorneys and heard oral argument before issuing a decision on the record. There was no evidence that anyone from Speckin, let alone any witness from either side, was preparing to testify. In fact, counsel for Challenge stated that his expert was running a "deep scan" on a hard drive at issue and that the scan was still running as of that morning. There was no hint that any expert had been preparing to testify at the hearing.

The invoice from Speckin bolsters this conclusion. None of the invoice entries suggest that the Speckin experts were spending their time preparing for testimony. Several entries involve time spent examining the hard drive, other entries involve preparing a "response," including a response for a hearing, and two more entries involve affidavit preparation and review. None of these tasks from the Speckin experts involved "court time and the time required to prepare for their testimony." *Van Elslander*, 297 Mich App at 218. There is also no evidence that anyone from

---

[7] The trial court's order also referenced some billing entries from the expert invoices that did not exist—including "drafting term sheets" and "drafting outlines for mediation." This factual error does not impact our ultimate conclusion.

[8] Challenge represents in its reply brief that it is no longer seeking to tax costs for the expenses of the neutral expert, Axis Discovery, because Autokiniton paid the entire bill.

Speckin was preparing to testify at a deposition or trial. The final pretrial scheduling order provided that discovery would be completed by January 28, 2022 and trial would occur on August 22, 2022. Speckin completed its work in December 2020, only weeks after the complaint was filed. It is simply implausible that the services rendered by Speckin involved preparation to testify at a deposition or trial. See *Carlsen Estate*, 338 Mich App at 703-704 ("That [the defendant] essentially discharged [its expert] three years before trial raises the question of the statutory authority to tax his fees as costs."). Therefore, the trial court did not abuse its discretion by declining to award Challenge any of the expenses charged by Speckin as taxable costs.

As for services charged by N1 Discovery, Bennett claimed that "N1 was hired to testify at trial in response to the proofs presented by Plaintiff's experts," and that all work by the N1 Discovery experts "was expended on preparing to testify and provide evidence." N1 Discovery performed services for Challenge from December 24, 2020 until March 22, 2021. The billing entries from N1 Discovery list the work type as consulting and project management, with specific billable services listed such as forensic imaging fees and shipping and handling charges. Other entries about billable time spent by N1 Discovery experts include correspondence with the client, conference calls with the client, follow up with technicians about devices, internal discussions, comparison of devices, spreadsheet review regarding file export, and work on a forensic memo. There is no reasonable basis to conclude from the content of these entries, as well as their timing in the case, that N1 Discovery experts expended their time on testimony preparation. One entry from March 18, 2021 states "[c]lient asked to stand down," which is consistent with a request from Challenge to pause expert services while mediation began. When N1 Discovery's expert services ended, no depositions had been taken, discovery was in its early stages, and a trial date was well over a year away. In sum, the trial court did not abuse its discretion by concluding that no expert witness costs should be taxed.

Challenge argues that because the only sworn evidence before the trial court was Bennett's affidavit, the court had no basis to reject an award of expert witness fees as taxable costs. We disagree. The fact that only Challenge submitted an affidavit does not mean the trial court was compelled to accept Challenge's request for costs. Autokiniton was not required to file any affidavits; the court rules provide that after service of a bill of costs on the opposing party, that party "may file objections to it, accompanied by affidavits *if appropriate*." MCR 2.625(F)(3) (emphasis added). As the party seeking costs, Challenge had the burden to establish entitlement to each item claimed in the bill of costs. See MCR 2.625(G). The trial court found that Bennett's affidavit and the expert invoices did not support awarding the expert fees as part of taxable costs.[9]

---

[9] Challenge also takes issue with the trial court's decision to strike the supplemental affidavit of Bennett that Challenge submitted after Autokiniton's objection. This is an independent evidentiary issue that Challenge failed to raise in its statement of questions presented on appeal. We could therefore properly decline to consider the issue. See *Bouverette v Westinghouse Electric Corp*, 245 Mich App 391, 404; 628 NW2d 86 (2001) ("Independent issues not raised in the statement of questions presented are not properly presented for appellate review."). Even if we chose to consider the issue, Challenge has not established that the trial court abused its discretion by striking the supplemental affidavit. The court rules expressly authorize the party seeking costs to file a bill of costs and accompanying affidavits, MCR 2.625(F)(2), and the objecting party may also submit

-10-

As discussed, this conclusion was well-supported under this Court's precedent and did not constitute an abuse of discretion.

Finally, relying on *Van Elslander*, Challenge argues that, at a minimum, this case should be remanded to the trial court for an evidentiary hearing. In *Van Elslander*, 297 Mich App at 218, the plaintiff challenged the trial court's award of the full amount of taxable costs for the defendants' experts who testified at trial. This Court went through entries in the expert invoices and found several times where it was unclear from the record if costs were taxable for certain services. *Id*. at 219-221. The invoices did not specify whether the experts' time was spent preparing for trial testimony—a taxable cost—or whether hours were instead attributable to nontaxable costs. *Id*. Because of the ambiguity in the record, this Court remanded "for an evidentiary hearing to distinguish between hours attributable to taxable versus nontaxable costs and commensurate recalculation." *Id*. at 221-222. Similarly, in *Carlsen Estate*, 338 Mich App at 708-709, this Court remanded for an evidentiary hearing to determine whether all expenses incurred for the services of an expert who testified at trial were taxable as costs. The expert at issue submitted three invoices for services spanning six years. *Id*. While the expert's "court time, preparation time, and travel expenses" were taxable as costs, billing entries for discussions with counsel were "not sufficient to allow the trial court, or this Court, to determine whether these discussions [were] taxable because they were for trial preparation, or [were] not taxable because they were for educating counsel about expert appraisals, strategy sessions, and critical assessment of the opposing party's position." *Id*. at 709 (cleaned up). For that reason, this Court remanded for an evidentiary hearing to distinguish between taxable and nontaxable costs. *Id*.

*Van Elslander* and *Carlsen Estate* are distinguishable from this case. Those cases involved experts who testified at trial, and who necessarily expended some services for court time and preparation that were taxable as costs. But the experts' invoices were not sufficiently clear to determine which portion of the experts' time was spent preparing for trial testimony and which portion involved nontaxable costs. Neither *Van Elslander* nor *Carlsen Estate* mandate an evidentiary hearing any time the party moving for expert witness fees requests one. To the extent that either case does impose a mandate, a prerequisite is concluding that the record is insufficient to distinguish between taxable and nontaxable costs. As discussed, no factual basis exists in this case to show that Challenge's experts were preparing for testimony. We therefore conclude that any evidentiary hearing would be futile because the record on appeal is sufficient to determine that the expert witness fees sought by Challenge are not taxable. The trial court did not abuse its discretion by reaching this conclusion.

---

affidavits, MCR 2.625(F)(3). Once an objection is filed, "the clerk must promptly examine the bill and any objections or affidavits submitted and only allow those items that appear to be correct . . . ." MCR 2.625(F)(3). As the trial court correctly stated, "[n]othing in MCR 2.625 provides for a supplemental affidavit to be filed after an objection is submitted."

## III.  AUTOKINITON'S CROSS-APPEAL

Autokiniton makes two main arguments in its cross-appeal.  It contends that the trial court erred by determining that Challenge was the "prevailing party," and it claims error with the trial court's decision to award Challenge mediation fees as taxable costs.

## A.  JUDICIAL ESTOPPEL

Before turning to these issues, Challenge raises a threshold argument that requires discussion.  Challenge contends that we should decline to hear this cross-appeal because Autokiniton agreed to "live with" the trial court's decision on an award of costs in exchange for the court voluntarily dismissing its complaint with prejudice.  Under the doctrine of judicial estoppel, Challenge claims, Autokiniton's cross-appeal is improper.

Judicial estoppel is an equitable doctrine which "generally prevents a party from prevailing in one phase of a case on an argument and then relying on a contradictory argument to prevail in another phase."  *Spohn v Van Dyke Pub Sch*, 296 Mich App 470, 479; 822 NW2d 239 (2012) (cleaned up).  Put another way, "a party who has successfully and unequivocally asserted a position in a prior proceeding is estopped from asserting an inconsistent position in a subsequent proceeding."  *Id*. at 480 (cleaned up).  "The fact that the prior and subsequent proceedings in this case occurred within the same litigation is not a bar to the application of the doctrine."  *Driver v Hanley (After Remand)*, 226 Mich App 558, 563; 575 NW2d 31 (1997).

We agree with Challenge that the trial court's agreement to grant Autokiniton's request for voluntary dismissal was conditioned on Autokiniton paying costs if ordered by the trial court.  Therefore, Autokiniton's arguments in its cross-appeal that challenge the imposition of costs are barred by judicial estoppel.

At the hearing on whether to order voluntary dismissal of the case, the trial court asked counsel for Autokiniton whether the company wanted to continue litigating the case or whether it wanted "to live with my decision one way or the other about the terms of" voluntary dismissal.  The trial court further stated:

> I just need you to answer my question because I'm not going to make a decision today about costs versus no costs, I just want to make a decision about whether or not you're going to continue to litigate the case.  If you want to continue to litigate the case because *you don't want to take the risk that I'm going to sanction—or require the involuntary* [sic] *dismissal to come with costs*, then we'll just— I'll just deny the motion, deny any relief to any party, and we'll continue to litigate and roll the dice on what happens with the case.

> \* \* \*

> Or if you say no, I want this case done, I'm going to involuntarily dismiss it—or voluntarily dismiss it *no matter what the conditions are*, then I'm just going to have you guys brief that issue.  [Emphasis added.]

Counsel for Autokiniton responded, "Autokiniton does not want to continue to litigate this case, which is why we asked for voluntary dismissal." The trial court then ordered either party to file a motion to fully brief the "terms" of voluntary dismissal, which the court clarified to mean the issue of costs. Challenge volunteered that it would file the motion requesting costs, and the parties agreed that after briefing the issue, if the court ordered costs, the parties could offer proofs on the reasonableness of particular costs. The trial court later issued an order, stating:

> Based on the discussions on the record, the case will be voluntarily dismissed with prejudice, *the terms of which will be addressed in a future order following a motion to be filed by Defendant Challenge*. That motion need not address the reasonability of any attorney fees to be assessed as a term of dismissal. [Emphasis added.]

The "motion" referenced in the order was Challenge's forthcoming motion for costs and attorney fees. Thus, the trial court's order provided that the "terms" of voluntary dismissal would be addressed in a later order following the motion for costs and attorney fees. In other words, the terms of the voluntary dismissal included the trial court's decision on an award of costs.

Autokiniton claims that the trial court "never stated that costs were a term or condition of dismissal." Instead, Autokiniton posits that the only terms were (1) voluntary dismissal with prejudice and (2) briefing the issue of costs and attorney fees. We disagree. The trial court stated on the record that Autokiniton could continue to litigate the case if it did not want to take the risk of voluntary dismissal coming with sanctions or costs, or it could accept a voluntary dismissal "no matter what the conditions are." Autokiniton unambiguously stated that it wanted voluntary dismissal. Further, the trial court's order provided that the "terms" of the voluntary dismissal with prejudice would be determined after briefing on costs. The court also noted that Challenge's motion for costs and fees did not have to address the reasonableness of attorney fees "to be assessed as a term of dismissal." Thus, the terms of voluntary dismissal were not limited to merely *briefing* the issue of costs and attorney fees but extended to the imposition of costs and fees after that briefing. If the terms had been set at the end of the hearing, there would be no basis for the trial court writing that the terms of voluntary dismissal would "be addressed in a future order."

This Court has long recognized that "under MCR 2.504(A)(2), a trial court has discretion to condition a grant of voluntary dismissal upon the payment of costs and attorney fees." *McKelvie v Mount Clemens*, 193 Mich App 81, 84; 483 NW2d 442 (1992). This rule is consistent with the plain language of MCR 2.504(A)(2), which authorizes voluntary dismissal of a case at the plaintiff's request "by order of the court on terms and conditions the court deems proper." In this case, as discussed, the trial court conditioned the grant of voluntary dismissal on Autokiniton accepting the award of costs and attorney fees that the trial court would determine after additional briefing. By successfully obtaining a voluntary dismissal conditioned on costs and attorney fees, Autokiniton is estopped from arguing on appeal that the trial court's determination of costs was

erroneous.  See *Spohn*, 296 Mich App at 480.  For these reasons, we decline to address the merits of Autokiniton's cross-appeal.

We affirm.

/s/ Michael J. Riordan
/s/ Mark J. Cavanagh
/s/ Kristina Robinson Garrett